IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANIXA SANTIAGO-RIVERA and MANUEL GARCIA-CASTRO, for themselves and on behalf of their daughter R.G.S.<br><br>**Plaintiffs,**<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO and DEPARTMENT OF EDUCATION,<br><br>**Defendants.** | **CIV. NO. 24-1187 (RAM)** |

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the Commonwealth of Puerto Rico and the Department of Education's ("Defendants") *Motion to Dismiss*. (Docket No. 30). As more fully explained below, because Plaintiffs'[1] claims under various federal statutes are interwoven with claims that first require administrative exhaustion. The Court is unable to grant relief at this time and thus **GRANTS** Defendants' *Motion to Dismiss*. Judgment of dismissal without prejudice shall be entered accordingly.

I.    BACKGROUND

On September 5, 2024, Plaintiffs filed an *Amended Complaint* alleging that Defendants unlawfully discriminated against their

---

[1] Plaintiffs include Anixa Santiago Rivera and Manuel Garcia Castro, who bring suit for themselves and on behalf of their daughter R.G.S.

minor child, R.G.S., on the basis of her disabilities, in violation
of Title II of the Americans with Disabilities Act of 1990 ("ADA"),
Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the
Individuals with Disabilities Education Act ("IDEA"), and R.G.S.'s
constitutional rights. (Docket No. 20 at 1-2). Plaintiffs contend
that Defendants perpetrated a "persistent and systemic" pattern of
discrimination that included the failure to provide R.G.S. with
equal access to educational services and opportunities. Id. at 2.

According to the *Amended Complaint*, R.G.S. has a hearing
impairment (deafness) that requires her to use American Sign
Language for communication and lip-reading to understand spoken
language. Id. at 3-4. Due to her condition, medical evaluators
recommended certain reasonable accommodations to ensure the
progression of her educational and personal development. Id. at 4.
Specifically, R.G.S. was referred to audiologists for
amplification hearing aids and recommended the use of a frequency
modulation ("FM") system to optimize her educational experience.
Id. In furtherance of this goal, Plaintiffs took steps with the
Department of Education ("DoE") to enroll R.G.S. in an
Individualized Education Program ("IEP") to receive special
education services. Id.

The Program and Placement Committee, associated with special
education program services, identified deficiencies in the use of

Civil No. 24-1187 (RAM)                                                      3

R.G.S.'s FM devices and recognized the need to address this issue.
Id. at 4-5. Plaintiffs aver that they first communicated with DoE
on November 14, 2022, about the problem, highlighting that the
hearing aids were outdated and that their functionality was
extremely precarious, resulting in significant challenges to
R.G.S. understanding her classes. Id. at 5. Since then, Plaintiffs
repeatedly requested that the DoE replace the FM device without
receiving a response. Id. In reply to their communication on March
7, 2023, Plaintiffs were told that the status of the FM devices
was under review. Id.

    Following that update, Plaintiffs continued another string of
attempted communications with the DoE, alleging that due to the
lack of diligence and response of officials in charge, "only one
hearing aid had been provided for the child's academic development"
in the more than four-month period since they initially filed a
request. Id. at 5-6. After a delayed attempt to schedule an
appointment to determine the device's suitability on April 27,
2023, R.G.S. was evaluated by an audiologist on May 22, 2023, and
the results were delivered to the DoE. Id. at 6. However, as
Plaintiffs contend, "[d]espite clear medical recommendations
specifying the needs for specific types of equipment," the DoE
provided hearing devices that were inadequate and caused

Civil No. 24-1187 (RAM)                                                    4

discomfort to R.G.S – forcing Plaintiffs to incur additional expenses and seek alternative solutions. Id. at 6-7.

By July 20, 2023, Plaintiffs still had received no updates regarding the status of the requested equipment; a follow-up led to them being informed that the issue "had been escalated to a central level," but provided no further details or a concrete timeline as the next school year approached. Id. at 7. Plaintiffs continued their attempts to contact DoE departments and even visited the physical offices, just to face "ongoing indifference and inefficiency." Id. at 7-8. Plaintiffs point to R.G.S.'s failing grades in September and a published news report highlighting the family's "nearly year-long wait to receive appropriate hearing equipment" as further evidence of the distressing situation. Id. at 7-8.

On September 19, 2023, Plaintiffs discovered that the necessary FM systems and hearing aid molds – which DoE previously claimed were ready for delivery – were not yet available. Id. at 8. On October 10, 2023, R.G.S. finally received the requested devices. Id. Even with the arrival of the equipment, Plaintiffs allege that "issues persisted with its use in the classroom" since teachers were reluctant to manage the equipment – noting continuing signs of academic decline and communicative setbacks. Id. at 9-10. Plaintiffs contend they were forced to intervene directly on

March 3, 2024, after several incidents where R.G.S. was "left without the necessary auditory support during critical assessments" and ongoing issues were compounded by DoE's "direct misrepresentations." Id. at 10.

On April 10, 2024, a session involving DoE officials and educational advocates took place to discuss "these prolonged and repeated failures" and other systemic issues in the DoE's operations. Id. On April 23, 2024, Plaintiffs filed their original *Complaint* in federal court. (Docket No. 1). The *Amended Complaint* was filed on September 5, 2024. (Docket No. 20).

Plaintiffs request various forms of relief. First, Plaintiffs seek an order instructing DoE to provide R.G.S. with the necessary assistive technology services as outlined in her IEP, as well as a declaratory judgment stating that DoE's failure to do so already violated IDEA and R.G.S.'s right to a free appropriate public education ("FAPE"). Id. at 11-15, 19. Additionally, they contend that the DoE's pattern of inaction despite all of Plaintiffs' efforts to obtain administrative solutions justifies any non-exhaustion of IDEA's administrative remedies. Id. at 14-15.

Second, Plaintiffs seek compensatory damages as well as injunctive relief under the ADA and Section 504 for the "systemic denial of necessary services" that demonstrate a "deliberate nature" to the discrimination against R.G.S. Id. at 15-18.

Specifically, Plaintiffs seek compensatory damages for the "emotional harm caused to [R.G.S.] in her educational process, as well as the mental anguish and distress experienced by her parents." Id. at 20. Additionally, Plaintiffs request a permanent injunction requiring Defendants to "take remedial efforts to mitigate the effects of their past and going violations." Id. at 19. They also seek a declaratory judgment stating Defendants subjected Plaintiffs to unlawful discrimination and nominal damages pursuant to the same. Id. at 19-20. Third, Plaintiffs seek attorney's fees, reasonable costs, and litigation expenses. Id. at 20.

On December 11, 2024, Defendants filed a *Motion to Dismiss* under both Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket No. 30). Defendants argue that Plaintiffs' ADA and Section 504 claims mirror their IDEA claims for the denial of a FAPE, thus Plaintiff's failure to meet IDEA's exhaustion requirement bars their pursuit of all these claims in federal court. Id. at 7-10. Defendants contend that, based on the facts, Plaintiffs have not first fulfilled the proper administrative procedures for seeking relief, nor have they demonstrated they qualify for an exception to the exhaustion requirement. Id. at 10-16. Specifically, Defendants highlight that

Civil No. 24-1187 (RAM)                                              7

Plaintiffs could not have exhausted the required administrative
remedies in the thirteen days between when a meeting with DoE
officials was held on April 10, 2024, and when they filed their
original federal *Complaint* on April 23, 2024. Id. at 15.

Additionally, Defendants assert that neither ADA nor the
Rehabilitation Act provide broader remedies than those available
under IDEA when the claims mirror IDEA. Id. at 16-17. Thus,
Plaintiffs are not entitled to compensatory and nominal damages.
Id.

On December 30, 2024, Plaintiffs filed an *Opposition to
Defendants' Motion to Dismiss* ("*Response*"), arguing that
Defendants "fundamentally mischaracterize[]" this case by
narrowing the nature of their claims into the confines of an IDEA
exhaustion requirement. (Docket No. 32 at 1). While the *Amended
Complaint* includes allegations related to educational services,
Plaintiffs maintain that "at its core this case challenges systemic
discrimination and deliberate indifference that extends far beyond
mere denial" of FAPE. Id. at 1-2. The lack of a FAPE caused not
only educational harm, but had a "significant emotional impact on
R.G.S." that reflects a broader systemic violation of rights than
a mere technical noncompliance with IDEA.  Id. 9-12. Plaintiffs
contend the alleged discriminatory conduct "could occur in any
public service context" and adults "with similar disabilities

could face identical discrimination." Id. at 2. Thus, the DoE's
prolonged deliberate indifference goes beyond technical IDEA
violations to constitute systemic discrimination that both Section
504 and ADA address. Id. at 2, 9-12.

Additionally, Plaintiffs argue the harm caused to R.G.S. due
to Defendants' systemic pattern of negligence and lack of effective
responses justifies their failure to exhaust administrative
proceedings. Id. at 6-9. They also highlight the recent decision
in Luna Perez v. Sturgis Pub. Sch., 598 U.S. 142 (2023), as support
for their claims seeking monetary damages – relief which IDEA
itself does not provide. Id. at 16. As such, Plaintiffs assert
they are entitled to nominal and compensatory damages for such
"emotional suffering, financial burdens placed on [R.G.S.'s]
parents, and lost educational opportunities" under ADA and Section
504, regardless of the claims' intersection with an educational
context. Id. 13-14. Accordingly, the Court has jurisdiction and
the ability to craft a remedy. Id. at 3.

On January 22, 2025, Defendants filed a *Reply*, noting Luna
Perez found that courts would not allow students and families to
"bypass administrative procedures to strategically get monetary
damages," rather, when those individuals allege violations of both
IDEA and ADA or Section 504, the ADA and Section 504 claims may be
deferred until exhaustion of administrative remedies. (Docket No.

37 at 3-7). Defendants re-highlight the two-question standard from Fry v. Napoleon Cmty. Schs., 580 U.S. 154, 158 (2017), contending that Plaintiffs could not have brought the same claims against a non-school public facility, nor could an adult visitor to the school have brought the same claim. Id. at 7-9. While Plaintiffs seek compensatory damages, they also allege the denial of FAPE and relate to R.G.S.'s IEP; therefore, Defendants argue that all Plaintiffs' claims are subject to IDEA's exhaustion requirements. Id.

## II.  STANDARD OF REVIEW

When ruling on a Rule 12(b)(6) motion, "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citations omitted).

The analysis for a Rule 12(b)(1) motion "is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth., 4 F.4th 63, 69 (1st Cir. 2021) (citation omitted). At this juncture, "[t]he Court must decide whether the complaint alleges sufficient facts to 'raise a right to relief above the speculative level.'" Arroyo-Ruiz v. Triple-S Mgmt. Grp., 206 F.Supp.3d 701, 706 (D.P.R. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### III. APPLICABLE LAW

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education and related services designed to meet their unique needs." § 1400(d)(1)(A).

According to the Act, the special education and related services that a FAPE is comprised of includes "both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Fry, 580 U.S. at 158. The "primary vehicle" for providing each eligible child with the promised FAPE is an "individualized education program." Id.; see § 1414(d). Every IEP

is crafted by a team consisting of the child's parents, teachers, and group of school officials, working in conjunction to create a personalized plan that meets all the child's "educational needs." Id.; *see* §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B). The plan "documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" Fry, 580 U.S. at 158; *see* §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa). *See also* D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012) ("An IEP must be 'individually designed' to suit a particular child, and must include, 'at a bare minimum, the child's present level of educational attainment, the short- and long-term goals for his or her education, objective criteria with which to measure progress towards those goals, and the specific services to be offered.'" (internal citations omitted)).

When a dispute arises between school representatives and parents, IDEA establishes formal resolution procedures to address such issues. First, dissatisfied parents may file a complaint concerning the provision of a FAPE with the state or local educational agency. § 1415(b)(6). Typically, that pleading triggers a preliminary meeting between the contending parties.

§ 1415(f)(1)(B)(i). Alternatively, or in addition to this, parties may opt for a mediation process. § 1415(e).

If the parties remain at an impasse, the matter continues before an impartial hearing officer in a "due process hearing." § 1415(f)(1)(A); *see* § 1415(f)(3)(A)(i). Any decision granting substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). This ruling, if the hearing is conducted at the local level initially, may be appealed to the state agency. *See* § 1415(g). Lastly, a still-dissatisfied parent may seek judicial review of the administrative process outcome by filing a civil action in state or federal court. *See* § 1415(i)(2)(A). Section 1415(i)(2)(C)(iii) directs courts to "grant such relief as the court determines is appropriate." This "authorizes courts to grant 'as an available remedy' the 'reimbursement' of past education expenses." Luna Perez, at 148 (quoting Sch. Comm. of Burlington v. Dept. of Ed. of Mass., 471 U.S. 359, 369-70 (1985)).

Notably, other federal statutes also protect the interests of children with disabilities – such as the ADA and § 504 of the Rehabilitation Act. These antidiscrimination laws cover both children and adults with disabilities in public schools as well as other settings. *See* 42 U.S.C. § 12131; 29 U.S.C. § 794. Title II of the ADA forbids any "public entity" from discriminating based

on disability, and Section 504 applies that same prohibition to any "program or activity" that is federally funded. 42 U.S.C. §§ 12131-32; 29 U.S.C. § 794(a). "[B]oth statutes authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages." Fry, 580 U.S. at 160. Regulations implementing Title II require public entities to make "reasonable modifications" to their "policies, practices, or procedures" as necessary to avoid discrimination. 28 C.F.R. § 35.130(b)(7) (2016). Similarly, courts interpreted Section 504 as requiring "reasonable" modifications to existing practices to "accommodate" persons with disabilities. Fry, 580 U.S. at 160; Alexander v. Choate, 469 U.S. 287, 299-300 (1985).

"In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." Fry, 580 U.S. at 170-71. This does not mean there is no overlap in coverage, rather the "same conduct may violate all three statutes." Id. at 171. For example, a complaint brought under § 504 and Title II may "seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation." Id. The interaction between IDEA and these other antidiscrimination laws is codified at 20 U.S.C. § 1415(l):

> Nothing in [IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . title V of the Rehabilitation Act of 1973 . . . or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted** to the same extent as would be required has the action been brought under [IDEA].

## IV.  DISCUSSION

### A. Plaintiffs' claims are sufficiently related to the denial of a FAPE to trigger the IDEA's exhaustion provision.

The standard in <u>Fry</u> serves to provide some guidance as to "whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination." 580 U.S. at 171. The Court enumerated two key questions: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school" and (2) "could an *adult* at the school . . . have pressed essentially the same grievance." <u>Id.</u> at 171. To give an example, the Court proffered a scenario where a student with a learning disability sues a school for failing to provide remedial tutoring – which could be cast as disability-based discrimination on the school's refusal to make a reasonable accommodation. <u>Id.</u> at 172. However, "can anyone imagine the student making the same claim against a public theater or library?" <u>Id.</u>

Additionally, "[t]he statutory language asks whether a lawsuit in fact 'seeks' relief available under the IDEA – not, as a stricter exhaustion statute might, whether the suit 'could have sought' relief available under the IDEA (or, what is much the same, whether any remedies 'are' available under that law)." Id. at 169. The Court held that a complaint seeking redress for harms other than the denial of a FAPE are not subject to § 1415(l)'s exhaustion rule because "the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE." Id. at 168-69. Thus, even if a "suit arises directly from a school's treatment of a child with a disability," the school's conduct might injure the child in ways unrelated to a FAPE such that a claim could be brought under a different statute seeking redress for those other harms, "independent of a FAPE denial," and not require exhaustion of IDEA's procedures.[2] Id. However, the Fry Court declined to address,

---

[2] To further elaborate:

> Suppose that a parent's complaint protests a school's failure to provide some accommodation for a child with a disability. If that accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. But if it is not, he cannot – even though the dispute is between a child with a disability and the school she attends. There might be good reasons, unrelated to a FAPE, for the school to make the requested accommodation. Indeed, another federal law (like the ADA or Rehabilitation Act) might *require* the accommodation on one of those alternative grounds. But still, the hearing officer cannot provide the requested relief. His role, under the IDEA, is to enforce the child's "substantive right" to a FAPE. And that is all.

within the meaning of § 1415(l), whether or not exhaustion is "required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests – here, money damages for emotional distress – is not one that an IDEA hearing officer may award?" Fry, 580 U.S. at 752 n.4.

Most recently, the Supreme Court in Luna Perez addressed the extent to which children with disabilities must exhaust administrative procedures under IDEA prior to seeking relief under other federal antidiscrimination statutes. 598 U.S. at 144. Under its view, "a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust § 1415(f) and (g)." Id. at 150.

Specifically, the facts of Luna Perez concerned whether a suit premised on the past denial of a FAPE may nonetheless proceed without exhausting IDEA's administrative processes if the remedy sought is not one IDEA provides. Plaintiff, *after* settling his administrative complaint, filed a lawsuit in federal district court "seeking backward-looking relief in the form of compensatory damages" under the ADA. Luna Perez, 598 U.S. at 145. The Court

---

For that reason, § 1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE.

Fry, 580 U.S. at 167-68 (internal citations omitted).

held that the limiting language in § 1415(l) does not apply to all
suits seeking relief that other federal laws provide, but rather
IDEA's "administrative exhaustion requirement applies *only* to
suits that 'see[k] relief . . . also available under' IDEA." Id.
at 147. Therefore, when that condition is not met, as in Luna
Perez, the exhaustion requirement poses no bar to a non-IDEA
plaintiff suing for relief that is unavailable under IDEA. Id.

Here, Plaintiff's claims are so tightly interwoven with the
school's failure to adequately follow the IEP in place, provide a
FAPE, and fulfill IDEA requirements, that a similar complaint could
not be lodged against other public facilities. *See* Fry, 580 U.S.
at 172. The claims are particularly tied to R.G.S.'s disability
and reasonable accommodations for her learning experience as a
child in a school setting; thus, (1) the same claim could not have
been made against another public facility, nor (2) could an adult
at the school have pressed the same charges. *See* id. at 171. The
entire focus of the *Amended Complaint* is the DoE's alleged
inability to timely provide the educational instruction and
services that R.G.S. needs in the form of the assistive auditory
instruments, resulting in the denial of a FAPE. Accordingly, all
the alleged financial and emotional injuries that resulted from
the DoE's practices and procedural failures – such as the claimed

compensatory damages for emotional distress and additional expenses - still ultimately stem from the denial of a FAPE.

Plaintiffs bring all these claims together in one *Amended Complaint*, under both IDEA as well as ADA and Section 504. The relief being sought here is a simultaneous ask for relief under IDEA and other various federal statutes. Plaintiffs seek both an order under IDEA to require that Defendants fulfill their FAPE obligations, as well as injunctive relief under Section 504 and ADA requiring Defendants to take remedial efforts. (*See* Docket No. 20 at 18-19). Although compensatory and nominal damages are also sought – remedies not available under IDEA – in such an instance, deferral of the requests under ADA and Section 504 is appropriate until § 1415(f) and (g) are exhausted. *See* <u>Luna Perez</u>, 598 U.S. at 150 ("[A] plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust § 1415(f) and (g).")

**B. Plaintiffs failed to adequately exhaust administrative remedies under 20 U.S.C. § 1415 prior to bringing their claims.**

The exhaustion requirements in 20 U.S.C. § 1415 are not judge-made hurdles that the Court may overlook, but rather a statutory mandate the parties must follow. While the delay in receiving responses and adequate services from Defendants may well be

frustrating, there is no evidence on the record that Plaintiffs first attempted to go through the full grievance process delineated in IDEA's statute before proceeding to appeal the issue to the federal court. Nor do Plaintiffs attempt to argue they satisfied exhaustion requirements, but instead they proffer a futility argument. In some circumstances, if exhaustion is deemed futile, parties can circumvent such administrative requirements. However, the Luna Perez court did not address "whether IDEA's exhaustion requirement is susceptible to a judge-made futility exception and whether the compensatory damages [defendant] seeks in his ADA suit are in fact available under that statute." Id. at 151.

Even arguing the futility exception applies to these circumstances, Plaintiffs fail to show that utilizing the proper mechanisms for relief would have been ignored and overlooked. While Plaintiffs allege a pattern of delay and negligence on behalf of DoE, there is no evidence they ever lodged a formal complaint to trigger the administrative exhaustion process and a preliminary meeting that could lead to a due process hearing, as required in § 1415(f)(1)(B)(i). Bringing informal requests or grievances to school administrators and the DoE regarding accommodations or changes to a special education program are not the same as commencing a formal administrative procedure within the definitions of IDEA. See Fry, 580 U.S. at 174 n.11 (noting

difference between informal requests to IEP team members or other school administrators and IDEA's formal administrative procedures). "After all, parents of a child with a disability are likely to bring *all* grievances first to those familiar officials, whether or not they involve the denial of a FAPE." Id.

Furthermore, as Defendants point out, thirteen days prior to filing the federal *Complaint*, there was a session involving DoE officials and educational advocates to discuss systemic issues in Defendants' operations. (*See* Docket No. 30 at 15; *see also* Docket No. 20 at 10). Any potential results from that meeting would not have been given the opportunity to play out before Plaintiffs proceeded directly to federal court. Additionally, there is no evidence this was a "due process hearing" as delineated in § 1415(f), nor was there an attempt to appeal any local level decisions (or lack thereof) to the state agency under § 1415(g) before Plaintiffs sought judicial review. Only after a parent is unhappy with the outcome of this administrative process can they seek review at a state or federal court pursuant to § 1415(i).

Accordingly, given the interwoven nature of all the claims and the central gravamen being based on the denial of a FAPE, Plaintiff should first exhaust administrative remedies, as laid out in IDEA, prior to bringing those claims and associated ones under the ADA and Section 504. Even though Plaintiffs are partially

Civil No. 24-1187 (RAM)                                                    21

seeking a relief that is not able to be granted under IDEA, the

requests are being brought simultaneously and concern the

resulting consequences of alleged discrimination that centers upon

the denial of a FAPE. Since Plaintiffs failed to exhaust the

administrative remedies provided for in 20 U.S.C. § 1415, their

claims must be denied at this time.

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's

*Motion to Dismiss* at Docket No. 30. Judgment of dismissal without

prejudice shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of March 2025.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE